Okay. All right, we'll move forward with our third case of the day, Wolfington v. Reconstructive Orthopaedic Associates, a.k.a. the Rothman Institute. Good morning, Your Honor. May it please the Court, Peter Levan on behalf of Appellant Andrew Wolfington and Plaintiff's Trial Counsel. With the Court's permission, I'd like to reserve two minutes for rebuttal. Thank you. The District Court here committed reversible error in two separate respects, both of which are on appeal here. First, the District Court dismissed the complaint on a motion for judgment on the pleadings in its entirety with prejudice. And second, the District Court sui sponte issued Rule 11 sanctions against Plaintiff's Trial Counsel and ultimately imposed a monetary sanction in excess of $38,000. We are appealing both, and we believe that there was a reversible error committed in each respect. Let's address the first in the order that you've raised them. One of the arguments you've made is that to the extent the District Court was treating this in the alternative as a 12D motion, that that itself constitutes a reversible error because there wasn't notice and opportunity to submit evidence. Yes, ma'am. The District Court states the different standards for 12C and 12D. It notes that 12D is not triggered by indisputably authentic documents, and it says it's declining to consider disputed material. So what is it specifically that you say the District Court was relying upon or citing that would have converted this to – and I recognize the District Court made some statements in connection with the motion for reconsideration – but aside from the statement, what actually in the decision suggests that it was on summary judgment? If we are limiting this issue, Your Honor, strictly to the merits opinion that was issued in December, I don't think that there is any dispute that the Court, in fact, was granting a motion for judgment on the pleadings under 12C. The confusion arose in the sanctions opinion that followed nine months later when it had re-characterized its earlier opinion as being granted on summary judgment and having no disputed issues of fact. If, in fact, the Court back in September, in the merits opinion, was, in fact, converting – had, in fact, converted that motion to a motion for summary judgment, it did err because it did not provide notice and did not allow us to conduct discovery into the existence of a written agreement. One principal basis on which the Court dismissed the Truth in Lending Act case was the purported absence of a written agreement between the parties. The only basis for the Court's conclusion as of the merits opinion was an alleged concession that plaintiff's counsel supposedly made at a telephonic conference two weeks prior. The subsequently produced transcript of that telephonic conference shows that, in fact, no concession was made by plaintiff's counsel. Plaintiff's counsel, in answering the Court's question, acknowledged that they did not receive any written documents from Rothman other than the two confirmatory emails that were cited and quoted in the complaint. But counsel did not, at that conference or any other time, concede that there was an absence of a written agreement. Isn't that the flip side of the same coin? And that is an acknowledgment that the only information we have, that is, the only writing that we know of here, are these confirmation receipts. Why isn't that, in effect, a concession that that is the writing that we can specifically point to and on which our complaint needs to rely? The reason, Your Honor, is there is reason to believe in this case that the agreement is actually in Rothman's possession. The Court, in October, before issuing its ruling, ordered the parties to produce documents to each other involving the financial transactions between the parties. In addition to that, plaintiffs had already served document requests asking Rothman to produce the document. Here's what happened. To your knowledge, there was, in fact, a document, a written offer and acceptance that was signed by both parties? We believe that it was orally provided over the phone and that Rothman was providing data and information into either an agreement or a document that could be sufficient to constitute a written agreement. And let me tell you the reasons why, Your Honor. Not only do we have the allegations of the complaint that there was an agreement that was reached over the telephone, we also have the confirmation of a payment plan. So, clearly, there is in existence a payment plan of some kind based on Rothman's own confirmatory email. But at the district court level, Rothman conceded that it met the general creditor's prong or the general prong of the creditor's standard under the Regulation Z requirements. Was Rothman referring to the exchange of emails back and forth or was it referring to an actual written document? I don't know, Your Honor, but what I do know is that in order to qualify as a general creditor under the Regulation Z, you have to have extended credit through a written agreement at least 25 times in the preceding year. There is no reason here to believe that Mr. Wolfington was treated any differently, but for whatever reason, Rothman did not provide documents to us in response to the court order or in response to the discovery requests. To be precise, Rothman doesn't concede that it is a creditor for general purposes. It qualifies that it's sort of assuming arguendo. It will take that position as it moves forward with an argument. And it also doesn't specify, even to that extent, that it's looking to these sorts of anticipatory payment plans as opposed to something it may be doing on the back end as to another kind of agreement. Your Honor, I cannot provide this court with information regarding Rothman's rationale for why it was conceding what it conceded. What I can state is that by conceding that it met the general creditor's standard of the Regulation Z definition of creditor, it was necessarily conceding that it had extended credit through a written agreement at least 25 times the preceding year. In this case, we had Mr. Wolfington and his father communicating with Rothman over the telephone. There was an agreement that was reached. There was a down payment that was made. There was banking information that was provided. Clearly, that information and data was going into something because Rothman then generated the confirmatory emails, both of the down payments. So they deny they have any such agreement? I don't know that they have, Your Honor. They say that even if you ask for it, it is a ban for production, that there would be no written agreement that they could supply. To the best of my knowledge, Your Honor, they did not comply with the court order and they did not respond to the discovery request, but there was not a statement saying that there was no such agreement. The district court found that Ms. Pino's declaration that was filed in support of the motion for judgment on the pleadings was sufficient to comply with the court orders for production, but there's nothing in Ms. Pino's certification that says that no such agreement exists of any kind. You think they have an agreement, you say, that was in writing as to what the terms of the arrangement was? Your Honor, we believe that either there is an agreement in Rothman's possession or there is documentation and data sufficient to constitute an agreement. And I'd like to, if I could, address the issue that the court asked for the parties to address regarding the official interpretation of this agreement requirement, because I think we're getting to the nub of this issue. Well, you have two things you have to address here. If we are satisfied that there's nothing that they have in agreement other than what's on the record so far, your position is, even without that so-called agreement, that you have enough to satisfy the Truth in Lending Act as it is? Yes, Your Honor, that's our first position. That's your backup or whatever? That's our first position, Your Honor, that we have enough regardless of, we have enough based on the current statement. Okay, and that the district court erred just based on what was before to deny your position that you do not have enough to satisfy the Truth in Lending Act? Correct, Your Honor, because the district court's only basis at the time was based on the concession that supposedly was made that, in fact, was not made during that conference. But going beyond that and looking at, okay, let's ignore that issue for right now and try to figure this written agreement out. Your position is that the e-mails and the arrangement is sufficient to satisfy the act as is, even without whatever they have in their possession? We believe that it is for the following policy reasons. The Truth in Lending Act is a remedial consumer protection statute that imposes strict liability for failing to disclose. In this case, it would be very odd and certainly counter to the purposes of the statute to let a lender determine whether or not they are subject to TILA by deciding when they are gathering this information from a debtor, whether or not they put it into a written agreement or whether or not they tend to share that agreement with the debtor. Remember, they actually filed a counterclaim against us in this case for the debt. So there's an agreement of the parties that, in fact, there was a debt created. The idea that a creditor, think of a used car salesman. If you go to buy a car and the guy is like, you know what, we're not going to put anything in writing. I'll just e-mail you when your due date for your various payments are due. You're basically allowing the fox to guard the hen house at that point. If they get to decide, if they can insulate themselves from TILA liability through the simple expedient of not reducing the party's agreement to writing or not sharing that written agreement with the other party and saying, oh, TILA doesn't apply. Do you have a dispense with the commentary? I think the argument with the commentary is that, in fact, it is irrational as applied in this situation when you're having an agreement over the telephone. But I don't think that this court needs to go so far as to ignore Regulation Z or find that Regulation Z should not be followed. I frankly think in this circumstance it doesn't make a lot of sense and it is counterproductive. On the basis of an exchange of e-mails, is that correct? The argument is yes, your honor. The actual statutory language has Mr. Worthington, was he ever obligated to pay back the debt in installments? We believe he was, your honor. And, in fact, the defendants believe he was too because they filed a counterclaim. Now, the district court dismissed the counterclaim without prejudice and said you should proceed with that in state court. But that issue is there. The requirement for a written agreement does not appear in the statutory language at all. There is a requirement for an agreement. But the written agreement language comes in in Regulation Z. And my point is in a situation under these set of facts where you have a credit agreement reached over the telephone, the debtor has no way, I have no idea, but you could have a situation where a creditor says, I'm going to write this down, I'm going to put this in an agreement, and I'm going to send it to you, and for whatever reason chooses not to. There's no case where that supports your situation, that this is sufficient to make a written agreement, though. Your honor, I agree that there is not case law that supports this argument. In every case you cited, there was something in writing done between the parties. Because in most circumstances, clearly the creditor wants a written agreement. I think that's what makes this somewhat unique. So what makes this a written agreement, the e-mails and what we have here? I would say, your honor, as an initial matter, what makes this an agreement? Let's say regulation Z, we've got to satisfy it. Okay. Then what I would say is that even if regulation Z and the official staff interpretation of regulation Z that says a confirmatory letter is not enough, let's assume that this panel decides we're going to apply that black letter and we're not going to question it. Regulation Z still does not say what does constitute a written agreement, even the official staff interpretation. So let's just say that this e-mail is not enough standing alone. Even if this e-mail is not enough standing alone, that official staff interpretation in regulation Z does not state that whatever information, agreements, and documents are in Rothman's possession regarding the parties' agreement, they're not saying that that isn't enough. And what we are saying is that the district court here You started out by saying that they appear to have something, but then they're giving it to you. Sure. How do you know they have this? Because, Your Honor, in order to set up the payment plan, you have to be inputting like Mr. Wolfington and his father were speaking to someone at Rothman. Rothman was then taking that information and data and putting it into a system. That system was then taking a down payment, and that system was setting up a monthly withdrawal from his bank account through a debit account. Clearly there was information and data that was being taken from the debtor and put into a system. It is our position that whatever it is in Rothman's system that I can't sit here as an officer of the court and tell you because it hasn't been produced. But whatever it is, we think we're entitled to it, and we think it may in fact constitute a written agreement, even assuming that that requirement applies under these circumstances. How do you know that we don't have this document that you're looking for? I'm sorry, Your Honor? Have they responded and said we don't have this written agreement that you're asking for? To the best of my knowledge, Your Honor, no, because there was no response to either the court order or to the discovery, and for whatever reason the district court said that they had complied through the PINO certification attached to the motion for judgment on the pleadings. Counsel, even at the telephonic conference, defense counsel followed up saying that's correct, there's only an email, and there's, quote, no signed agreement by the plaintiff to make payments. They have represented, and the response of plaintiff's counsel was silence that would seem to convey to the district court acquiescence in that status, and presumably they would have learned from their client what agreement the client had seen, signed, known anything about. I don't think there is any doubt that there was no signed agreement, Your Honor, in terms of actual physical signature. However, as I understand it, consent was given over the telephone in the same way that I'm doing a slash when I'm filing something electronically or I'm assenting to an agreement over the telephone. So I agree that I don't believe that Rothman has in its possession a document with Mr. Wolfington's handwritten signature, but in terms of the essential elements of what would constitute a written credit agreement, how much is owed, how long is it owed, is there going to be any financing charges, is there going to be a late fee, that there is some document that they were putting this data into, if for no other reason than to be generating the emails and everything else that, in fact, we have. But they have some sort of notes inside which document whatever arrangement they had when they spoke about this and the emails generated. How could that satisfy the requirement of a written agreement? An agreement you always consider to be something that two people sit down, the meeting of the mind situation. Sure. At the very least, I'm sort of looking at what you're agreeing to. You never agreed to whatever they put down in their private memorandum or whatever, did you? Well, in fact, Your Honor, there was an agreement that was reached over the telephone regarding the terms, how much was going to be put down, how much per month was going to be paid. But you never agreed to anything which they may have put down in their internal documents, if there is such a thing. That's correct. That's not an agreement what they put down that you never saw. Well, neither the statute nor Regulation Z defines what constitutes a written agreement, and it's our position that the court should consider the remedial and consumer protection purposes of the statute in defining that. Parties have to come together, have to view the written agreement, and agree to the terms of what's in that agreement and sign off on it. I mean, it's pretty basic contract law. Well, Your Honor, I would submit that the parties did that over the telephone, that consent was given, and that whatever documents Rothman generated within its system, maybe you're right. Maybe whatever agreements or documents Rothman generated in its system do not constitute a written agreement. But that's certainly information that we should be entitled to obtain in discovery, which the district court did not allow, and the district court's sole basis on the merits was that concession that wasn't given. Counsel, look, we're reviewing an order of judgment on the pleadings, and the existence of an agreement is an element for the TILA claim. That's the responsibility of the plaintiff to adequately plead. And the only things that are appearing in the complaint in terms of pleading are the confirmatory emails. There's no suggestion or postulation of the existence of some other agreement. In fact, I think the first time that appears is in the supplemental response on the rule to show cause significantly later in the case. So even to the extent that that's something you're now hypothesizing might exist, where it's not alleged in the complaint, how would that undermine in any way the judgment on the pleading? I think, Your Honor, what was alleged in the complaint was that there was an agreement for extension of credit. The word written agreement, I agree, was not alleged in the complaint. But Quambly requires that there be more specific pleading than that, and the only specific agreements pleaded are the confirmatory emails. That's the only, other than the discussion, other than the allegations regarding that the agreement was reached between Mr. Wolfington and Rockman and then confirmed in the emails. I will agree that's the only allegations in the complaint, but I would say that either that is sufficient or at the very least is sufficient to show that there is a likely, the likelihood of a written agreement in Rockman's suggestion. How is that, it's your requirement to plead an agreement in your complaint. Yes, Your Honor. How are what you would in the complaint pled satisfy the requirement that there be an agreement? I mean, you can't say, well, I'll show you the agreement after I get discovery. What in the complaint shows that they agreed to extend credit for you under this terms that the requirement of the act. We made specific, sorry, Your Honor. The specific allegations in the complaint regarding an agreement were not limited to just the confirmatory emails, although admittedly the confirmatory emails were cited. In paragraphs 20, 19 and 20, there are allegations that an agreement was reached between the parties regarding the extension of credit and then there was a reference and a quote from the two emails. Well, the allegations are not an agreement. You have to plead an agreement in your complaint and you're pleading. You're pleading there are allegations that you make or they make, but you've got to produce or plead an agreement in your complaint. Otherwise, the complaint does not stay a cause of action. Now, and all you have there are the emails, but without your pleading an agreement, how can you get off the starting blocks before you get started? Your Honor, we did specifically plead the existence of an agreement in paragraph 20 of the complaint. What did you say? An oral agreement. Does it say written agreement? It does not say written agreement, Your Honor. I'm back to square one. You've got to have a written agreement. Where in your complaint is a written agreement? The complaint does not allege a written agreement, Your Honor. It alleges an agreement for extension of credit. Okay. How is a district court erred when he's in a case where you have to have a written agreement to have a cause of action and you haven't pleaded to have a written agreement? Your Honor, the district court didn't rely on that basis to dismiss the complaint. He relied on the concession that didn't exist. Whatever he relied on, what we have before us in our record is that you have a complaint without an agreement. I admit to you that this thing is very disturbing, this case, the way I tell you myself, the way it was handled and so forth. But on the merits of the case, I was lost from day one, thinking something went over my head, but there's nothing in the complaint to get started with showing that that is your obligation to plead an agreement. The best thing I can say, Your Honor, is we believe that there is a written agreement. We believe that the agreement is in raw condition. Does that satisfy a written agreement for your alleging there's one when you don't produce one? Well, Your Honor, that's when I think the public policy has to come in. A lender can't insulate itself by refusing to distribute the written agreement. Yeah, but you can allege anything. You can allege anything, and that's not a complaint. Alleging something, you've got to have under this act, you've got to have a written agreement to have a cause of action. You can't allege that there's a written agreement. You've got to, as a part of the cause of action, say this is the written agreement. Actually, according to pleading, you should attach it to the complaint, but forget about that. That's waste. Yeah, we believe that there is either a written agreement or that the data and information in Rawson's case is sufficient to constitute a written agreement. I believe that too, but you didn't produce anything. Because we didn't have it, Your Honor, and we were prevented from conducting any discovery before the court declared as a matter of law that no agreement existed. You can't prove you have a written agreement in a complaint by saying I'm going to prove it through discovery. I understand that, Your Honor, but we did allege that we had an agreement. We made a partial payment pursuant to that agreement. We went forward with the surgery pursuant to that agreement, and we asked for the creditor to produce the document, which they did not. And I know that I'm out of time, but the sanction issue is really important. I understand, Counselor, you're on our time, and we recognize that that's an issue of importance to you and to your clients, but let's make sure that we've satisfied people's questions on this subject before we turn to that, and we will ensure the same for your adversary. Thank you, Your Honor. I take the point that you've made on Tila raising remedial concerns and that the lenders can be the ones to decide whether something's qualified as a written agreement or not when they are undertaking an extension of credit. In some ways, it becomes a circular question, but why here? There doesn't seem to be any dispute that the writing of the financial policy that was assigned writing, that that would not qualify as an agreement for Tila purposes, right? Sure. We don't believe that it would. So why doesn't that take this situation out of the realm of those that we would need to worry about, the car sale, for example, where it's a traditional extension of credit. Here, it's a medical provider. There's an agreement about payment for medical services, and then there's an informal agreement that's reached about how to work out the installation of those payments. That being confirmed in an oral agreement, informal sort of work-out agreement, even before the debt's incurred. But why should we be concerned about that in the nature of the abuses that you're making reference to? We do not believe that the financial policy actually created any debt. This is merely an acknowledgment of potential responsibility, which is contingent and unliquidated at the time. For instance, if Mr. Rothman signed this financial policy on January 12th, and on January 14th of 2016 decided not to go forward with the surgery, Rothman couldn't run into court and sue him for breaching the financial policy. But that's typically true of the payment plan, right? It's only when, with the understanding about how much would be due, that a patient decides to move forward with a procedure. At that point, they've actually understood... It accrued the debt, sure. So why does that really distinguish it? I mean, it's part of the issues around distinguishing right as well. I think the reason that it distinguishes it is even if this, see if I can describe it, even if this somehow can be deemed the equivalent of establishing a debt, the parties renegotiated that before the debt accrued, and that is the distinction between Bright and this case. Because before the debt was actually accrued, they said, no, no, no, this is how we're going to be treating the deductible for these purposes. You actually had in that electronic exchange an offer from Rothman, and you had an offer to pay the deductible with a, I think it was a $200 deposit, and the rest in monthly payments. And I believe there was an acceptance to that offer. The acceptance to that, Your Honor, was the $200 down payment. So it was a package deal of $200 up front and then $100 per month. I mean, could you have, could you satisfy the requirement of a written contract by electronic messages going back and forth? You can have an offer, an acceptance. The only thing you don't have is a signature. And we would argue, Your Honor, that, again, because neither the statute nor Regulation Z defines what constitutes a written agreement, even if this court decides that a written agreement is, in fact, required, in figuring out what is sufficient to meet that requirement, the consumer protection and remedial purposes should come into play. And, yes, we would say that that is sufficient, and the consent is the fact that the $200 payment was made and that he went forward with the surgery. You say the $200 payment was, in fact, the acceptance of the offer. Correct. Because it was pay $200 now, pay $100 a month. The $200 was paid. There's no dispute about that. And Mr. Wolvington went forward with the surgery. So the offer was clearly accepted. Well, you're still missing the signature saying I accept. Correct, Your Honor. Except to the extent that consent was given over the telephone, and I can't, as an officer of the court, represent to you what Rothman did with that consent. We check boxes all the time on the computer that supposedly is consenting to things. It is the equivalent of a signature. Every time I do a slash S with my name, that's the equivalent of a signature. So it may very well be that whatever form Rothman was putting this data into, there is an argument that that is sufficient to constitute a signature and that the overall data and document that was created is sufficient to meet the written agreement requirement of the statute. But again, we don't know that because we weren't permitted to take discovery into that issue. If I may turn to the sanction issue, there are three specific arguments that we have, and I will be brief because I do understand that I'm way past my time. But there are constitutional due process arguments that apply to at least three of the four rationale. I think, as Your Honors may have seen by looking through the record, the rationale for sanctions kind of shifted throughout the proceedings. The original order that started the Rule 11 that the court sui sponte issue did not have any specific delineation of why sanctions should cause. There was no particularized notice. The only thing that was constant throughout was that this was a frivolous claim and that it should never have been brought in the first instance. And we aren't making any procedural due process with respect to that aspect of the Rule 11. We don't think that it's correct substantively, but we're not raising that. But with respect to the issues of the bank records, of the allegations of the complaint regarding withdrawals from Plaintiff's bank account, and with respect to alleging that Mr. Wolfington would make an adequate class representative, there was no particularized notice. There was no reason for Plaintiff's trial counsel to understand that those issues were being considered by the court as a basis for sanction. Their declarations didn't deal specifically with that. It did have a rather thorough evidentiary hearing, I thought. It did, Your Honor. I'm not saying you were noticed as to what was going to be on the court's mind, but it had a very thorough hearing over many of these points that you raised right now. It did, Your Honor. But even after that hearing, in the order that it issued the same day of the hearing, it said the primary issue following the hearing is whether Plaintiff's counsel had sufficient facts to allege a written agreement. So even though it had an evidentiary hearing, and admittedly there were some questions about bank records, but it was more a question of when did you get them, who has them, what bank was it at, there was not a particularized notice that this was going to be an issue. So even after that evidentiary hearing, when you're getting an order saying this is the issue, that's the primary issue, their subsequent briefing, of course, focused on that issue and didn't address any of these other rationales that the court then utilized in its sanctions opinion many months later. Mr. Levin, do you agree that a court can provide oral notice of particular allegations that are going to be the basis for Rule 11 sanctions? Sui sponte. That's the way courts make motions. That's called sui sponte. I think, Your Honor, if technically I think the rule requires, or at least the case law interpreting the rule requires, a rule to show cause with particularized notice, I don't recall there being any specific requirement of that being in writing. But I think even if you assume that oral notice is sufficient, that we did not have particularized notice here, even throughout the evidentiary hearing, because if there's a question about a particular topic or something else, that in and of itself isn't indicative that that's a potential rationale for sanctions. Is it a question of notice or the propriety of the amount of the sanctions? It's actually, I think, Your Honor, it's actually three things. So one is the notice. Two is the authority issue that this court identified in its letter, that actually applying a monetary sanction sui sponte goes beyond the authority granted to the court in Rule 11. That's not in our briefs, and frankly, that's not a focus of our argument today, because honestly that's not the harm that we're attempting to remediate through this appeal. Even if the district court had issued no monetary sanctions but just some type of public admonishment or the like, we would still be here because the harm that Plaintiff's Trial Counsel is facing is the reputational harm of finding inappropriate conduct or failing to... Well, don't you agree, or maybe don't agree, that it's somewhat troubling that the complaint had really false allegations concerning Mr. Wolfinger's further payment on the surgery? Yes, Your Honor. I think that was actually false. I think it was false, Your Honor, but there was not a reason for them to understand and agree to that at the time. And also considering the false allegations about the attorney's fees and to obtain the bank records until the court ordered that they be produced. I'm sorry, I didn't understand the question. There were false allegations with the attorney's failure to obtain bank records. There were bank records that were produced here, but they didn't produce with the court. There was a miscommunication, I think, with the district judge here, Your Honor. The October 28, 2017 order required the parties within 21 days to disclose documents regarding the financial transactions between them. Rossman produced nothing, but within that three-week period, the motion for judgment on the pleadings was filed with the certification saying that no further payments had been made. Plaintiff's Trial Counsel then consulted again with the client and said, hey, we're being told information from Rossman that is inconsistent with what you told us. We need more information and documents from you. In that three-week period, they got additional documentation showing that, in fact, they thought that the first payment that was not made was in June, which was payment five. They got information to understand no payments had been made. So starting in February, no payments had been made. So by the time the production date for the financial transactions between them, they produced those documents, the emails from Rossman showing that there had been no withdrawals from the account. They did not obtain and produce the bank records because there was no longer a dispute about that point. Both sides agreed that no payments had been made, and they didn't feel that they needed to do that. For some reason, the court thought that that October order required them to get bank records when, in fact, it just said documents concerning the financial transactions, and by that production date, there was no dispute that no payments had been made, and so they hadn't done that. But to the extent that the issue is a violation of the court order, Rule 11 sanctions wouldn't be appropriate for that. That would be, for example, Rule 37. Correct, Your Honor. That is correct, Your Honor. And I think the other thing that the court didn't fully understand, and admittedly, it gets a little convoluted in these types of financial transaction cases, but the bank records and the allegations regarding withdrawals from the account had nothing to do with TILA at all. Zero. Even if you excise each of the paragraphs that the district court discussed, they would be able to bring the exact same TILA claim under the exact same facts seeking the exact same relief. And so the court did say three different times in the sanctions opinion that we are ignoring the EFTA claim because as soon as they realized that, in fact, no payments had been made, they did what they should have done. They immediately withdrew the EFTA claim. And they produced the document in connection with the order. The part about the district court concern seems to be the sufficiency of the pre-filing investigation because making false statements even in the background section and assigned pleading could form the basis for Rule 11 sanctions if they have not been responsibly researched. So how do you address that in terms of the sufficiency of what counsel had before? Is it enough to go on the basis of the representations of a client alone without getting documentation to back up the client's case? Let me address that point, Your Honor. Thank you. With the benefit of hindsight and certainly understanding the district court's review of the bank records issue, plaintiff's counsel clearly wishes that they had secured the bank records before filing any complaint. It would have been better practice to do that. There's no dispute about that point period. The question here is whether or not they were ethically obligated to do that. And in this case, they met with the client six or seven times. The client said that he had entered into an agreement, that payments had been made until June, and he provided them with the emails and provided them with the June denial, the June email that he got saying that payment had not been made. There was no reason for them to disbelieve that payments had not been made in February, March, or April because if the client was saying that a payment wasn't made in June and gave them an email from June, why wouldn't he have done the same thing for February, March, and April? So with the benefit of hindsight, clearly they would have preferred to ask to see bank records and demand to see bank records. The interesting thing, though, I just want to raise this issue, is when, in fact, they got the bank records and they actually produced the bank records to the court, the bank records don't show any attempted withdrawals any month. So if you actually look at the bank records, it doesn't show like Rothman attempted withdrawal that was rejected for insufficient funds or something else. It doesn't show anything. So there's clearly something that happened here, whether it's on Rothman's side, the bank's side. I can't tell you because, again, we didn't get into discovery, but had they pulled those records, it still wouldn't have shown them. I guess it wouldn't have shown them a payment, but it also wouldn't have shown them a payment that was rejected. There is just no reference whatsoever on any of those. Even beyond the district judge seeming to be disturbed that things were held back or misrepresented about the case, how about your argument that even if the case isn't meritorious, that it's within the contemplation, it's not frivolous, because it's within the contemplation of the development of the law, which is the first guy out of the chute is always a pilgrim, and that's how law develops. So if this is not frivolous, it's got a good argument, maybe you reject it, but it's not frivolous to the point that it has to be in order to deserve an overall 11th sanction. We certainly believe that this case should not have been dismissed. Even though you couldn't cite a single case which tracked your factual... I agree, Your Honor, that there's not a case out there under the identical facts. Or any facts therein, as far as I... I think that's true because in most instances, I assume a lender would like to have the benefit of a written agreement so in fact they can run into court and bring a collection action if it's not paid. Every case cited had that. And that makes sense because that's kind of a typical arrangement that you would expect a lender to want. They would want the benefit of a writing. But I would certainly agree that if this court were to find that, in fact, the district judge did get it right and properly dismissed the case on a motion for judgment in the pleadings, that it nonetheless erred by sanctioning plaintiff's counsel for even bringing the claim in the first instance. When you have here a credit arrangement that's done over the telephone, the borrower has no control over what the lender is doing with the information. It has no control over whether the lender is putting that information in an agreement and is sending it off to them or doing nothing with it. The idea that the lender should be able to decide whether or not they're subject to TILA or not through its own decision-making or its own systems, I think, is inappropriate. And I think certainly there's a good faith basis for arguing that the disclosures, given that this is a consumer protection remedial statute that was entirely created for the benefit of borrowers, that there's at least a good faith argument that they filed a claim appropriately and that even if it did not ultimately win, that they certainly had a good faith basis for bringing it into complaint. If there's no other questions, I thank you for the court's indulgence. Thank you, counsel. Good morning, Your Honors.  I think it was pretty clear from Judge Baleson's memorandum dismissing the complaint that he didn't rely on anything outside the record. The only reason there was a certification from Gino Pino submitted in connection with the motion is that the motion originally sought to also dismiss the electronic fund transfer counts. And it was only after the motion was filed and the certification of Gino Pino was submitted in connection with that motion that the plaintiffs withdrew that count. There's no facts that are cited by Judge Baleson that are outside the complaint. It was clear, as Your Honors noted in my opponent's argument, that plaintiffs never pled in the complaint that there was any written agreement. What's interesting is that while plaintiffs alleged that there was an oral agreement and they cite to an email that confirms the oral agreement on January 20, 2016, that plaintiffs are being put on a payment plan with payments to be paid $100 a month beginning February 21, 2016 by credit card, the plaintiffs contend that wasn't even the agreement. The plaintiffs contend that the agreement was that the payments were going to be deducted from the plaintiff's bank account. So based on their pleadings, even the email doesn't confirm what they say was the oral agreement. Counsel, looking at the district court's opinion, it appears that the district court was at bottom exercised about a theft of services by plaintiffs or the father's email that seemed to be seeking business. What relevance does that have to a TILA claim? Your Honor, I don't think it does. But I don't think that was the basis for his opinion. He went through a very lengthy analysis of TILA, Regulation Z, the Federal Reserve Board comments that were cited in Bright v. Ball. So while I think he injected his personal opinion as to what he thought was the basis for the complaint, he still set forth a full and complete legal analysis to justify his decision to dismiss this complaint. Do you agree that the subsequent payment history of the debtor doesn't bear on whether disclosures were required to be made and were made at the time of confirmation of the agreement? I think it does impact whether there was confirmation. And in this case, there was... Subsequent history impacts whether there was confirmation of an agreement? Yes. There was some case law out there that suggested that if there was... And that was kind of what Ball said. Ball said, you know, if they made a payment, maybe there was an agreement. But there was no payment, so there was no agreement subsequent to the offer because payment could be considered acceptance. What happened here, though, when there was an offer and there was an acceptance and there was a payment made that was accepted? Well, see, that's convoluted, too, because according to the plaintiff, the financial policy was not a debt. So if the financial policy was not a debt and there was no debt created until after surgery, then the $200 couldn't be... There was an offer made to him of how to pay off a $3,000 deductible and that you would accept the $200 payment as a start and that there would be payments of maybe $100 a month thereafter, and he accepted. Well, if you read the emails that are cited verbatim in the complaint, the first email for the $200 payment doesn't say anything about a payment plan. And there was in existence on January 20, 2016, the financial plan agreement where the plaintiff agreed to pay his deductible for surgery. It's our position that that was a valid contract. It was an executory contract, but it was a valid contract that he breached. You can satisfy the requirement of a written agreement through an exchange of emails? You cannot, Your Honor. And that's based on the comments, the official comments to Regulations V and the Federal Reserve Board's statements, interpretations going all the way back to 1977. I mean, I think the official interpretation of Regulations V couldn't be more clear. A letter that merely confirms an oral agreement does not constitute a written agreement for purposes of the definition under Regulations V. And the Breit versus Ball case cited back to the Federal Reserve Board, which is entitled to substantial deference in interpreting TILA and Regulations V. And the Federal Reserve Board went through a situation that didn't involve a hospital. It involved a bank, but it was almost identical in facts. There was a deficiency balance that existed. There were oral discussions regarding the payment. A payment schedule was suggested. An oral agreement for monthly payments without interest is agreed to. And then the bank would send a form, letter, and a coupon book mailed to the consumer. And the Federal Reserve Board concluded that those facts don't result in a TILA transaction because it's not a written agreement. And as your Honor says, Cohen. Is that the rationale? Is that exactly what they said? It doesn't satisfy the requirement because it was not in paper writing as opposed to an electronic exchange? I don't think it makes a difference whether it's an e-mail or a paper. I think what matters is whether there's an actual written agreement signed by both parties because part of whether or not there's a TILA transaction involves consummation. Consummation means that the plaintiff is legally obligated for that debt. Well, yeah, but the district court, I think, made a mistake here. He said he's dismissing this because the plaintiff's counsel made a statement there is no written agreement. That's not what I remember from the briefing that he said. He said that there was no – that the written agreement was in the e-mails. Or something to that effect to say that the only information that meant the e-mails will spell out the written agreement. But according to the plaintiff, the e-mails don't spell out the written agreement. Well, he does. He said that if he gets his e-mails and what you did with his e-mails, there will be a written agreement. And this is a consumer statute that we read liberally and so forth, and it doesn't mean that it has to be a written down agreement and everyone looks at it and signs at the same time. Why can't you have a written agreement based on e-mails going back and forth? But the district court dismissed it. He said the plaintiff's counsel made a statement that there is no written agreement in the case, whereas he misquoted what the counsel said. Even if he was mistaken about that, the complaint still doesn't allege a written agreement. I agree with you on that. But the theory of the plaintiff is not that they got together and signed an agreement. That's obvious. The whole question in this case is can you have a written agreement based on e-mails and, you know. On the facts of this case, as pled in complaint, I don't think you have it. You don't have any e-mail from the plaintiff saying, I accept. Well, we don't know what his position is. If he got discovered, you would see what you did with his e-mails and what you did was there was a definite arrangement made here for him to be operated on. He was operated on. There was some arrangement made. His position is there's something in your coffers that he never got a chance to discover. I don't know what it could possibly be, Your Honor. Well, he doesn't know until you want to answer his demands through Purdue. What I do know is that the plaintiff never responded back and said, I agree to pay $100. Yes, that's agreeable to me. The plaintiff never made a $100 amount payment. But, Counsel, as you pointed out a moment ago, the fact of a payment can be one way to show acceptance of an agreement. Right, and that didn't happen yet. Why shouldn't we, in a situation like this, and considering the era in which we live, where there is follow-up e-mail confirmations of other kinds of agreements, why shouldn't we look at this as an integrated agreement? There's a financial policy, which is signed writing about what the total amount of the debt would be, and then there are e-mail confirmations about how the payments will be made on that, and there's acceptance of that overarching agreement of the payment plan for the full amount that is accepted through the payment and moving forward with the procedure. Because the e-mail doesn't say it's a confirmation. It's an offer. We're setting you up on a payment plan of $100 a month. It doesn't confirm anything. That's Counsel's characterization other than the complaint, but if you read the language of the e-mail, that's not what the e-mail says. But all we need for an extension of credit, the term credit, it can mean just deferring payment of debt, and that's the pre-existing debt situation we had in Bright, but it's also defined to mean to incur debt and defer its payment. And in a situation like this, where information is being provided to a consumer about what the terms of payment will be, and in reliance on that a consumer is going forward to then incur the debt and take on that financial obligation, why isn't that exactly the situation that TILA disclosures are intended to address to ensure that a consumer is making a knowledgeable and informed decision before they take on the debt? Because there's no evidence in this case that the plaintiff agreed to the offer of making payments of $100 a month. There's no written agreement. There's no e-mail from the plaintiff back saying, okay, that's great. I'm going to start making $100 a month payments. But there's a combination of writings here, one signed, indicating that full payment will be required before going forward, and then e-mails confirming that they've agreed to a different way to work out that payment rather than lump sum, and an initial payment in response as well as moving forward with the procedure. Why doesn't that look like just if we were in a contracts class, an offer and through those acts, acceptance? Well, because there isn't any evidence of an acceptance. The two ways that he would show acceptance, there actually would be three ways. He would sign a written agreement saying, I agree, send an e-mail back saying, yes, I accept the payment plan, or make a payment. I thought there was an initial payment. Was there not an initial payment? No. No payment at all. It's Wachman's position that $200 payment was made under the financial policy, that he paid a partial payment of the full deductible. Why should it be characterized as that rather than the first step of paying the lump sum? Because that's the only agreement that they had in place at that time. And, in fact, there was never any other agreement. Wachman couldn't ever take that e-mail and go into court and sue the plaintiff on that e-mail and say, you were supposed to pay us $100 a month, and you didn't. What Wachman's counterclaim was based on was the financial policy, which is you were supposed to pay us the full deductible before we performed the surgery. We performed the surgery. You still haven't paid your deductible. But you don't deny that you can have an agreement electronically. You can have an offer and acceptance and a payment. You're just saying there was no acceptance here. I'm saying there was no acceptance in this case. I don't think you'd have a unilateral agreement. You don't have to have. If someone does something, if you agree that you'll do an operation for someone, if they'll make a payment plan and they make a payment plan and they say that they'll go ahead, they, I don't know. I mean, I could see you could stretch it out and say it's a unilateral agreement. You don't have to have the other side sign it. I don't think there's any case law until it says that that's acceptable. Well, we're interested in whether this is a very liberal consumer-oriented statute. And why can't that statute be adjudicated as including e-mails concerning agreements that are made or to be made? Someday a court may find that in a similar case like this, the plaintiff responded back and said, yes, I agree to pay the $100 a month or made a $100 payment that there was an agreement. But I think you have no evidence of a meeting of the minds here. And as I indicated, the e-mail itself that says we're setting up this payment plan provides it to be paid by credit card every month. The plaintiff says that wasn't the agreement. So they didn't have a meeting of the minds. Doesn't it go back to the very purposes of TILA? There's this much confusion about what the terms are of the agreement. And there's a consumer who's incurring debt on the basis of repayment obligations that they're taking on without those things specified to disclose in writing. Isn't that where Congress was concerned? Yes, but I would submit to the court that in this case the plaintiff didn't assume debt. The plaintiff was already obligated to pay the deductible before surgery. Rossman went ahead. They scheduled the surgery. They put staff on it. They had doctors. They had a room set up. Is your position really that if a patient decides not to go forward with the procedure, even minutes before a procedure, that they've incurred the full debt of the procedure? No, but it's an executory contract. So the obligation of Rossman really didn't occur until plaintiff paid the deductible. In this case, plaintiff didn't, but Rossman proceeded. But there was a breach of that executory contract. When is the debt incurred by the consumer? Under this case? I would say the debt is conserved. In this case, when the financial policy was signed, there was a debt that was incurred. But you wouldn't seek to collect on that debt if he didn't move forward with the procedure. But it was still an executory contract. I'm not sure I follow how there's any legal obligation on the part of the consumer to repay that debt until a patient moves forward with the procedure. So it was an executory contract, meaning that each party had obligations, but if one party failed to complete their obligation, that would leave the other party of their obligation. In this case, under the financial policy, the only party who completed their obligation was Rossman, putting the plaintiff in breach. But that's just the other side of saying when he chose to go forward with the procedure is when he took on the debt. See, I disagree because there is an agreement. If I come into a car dealership and I say I'm going to buy this car, I'm going to pay $20,000 for it, and we sign the agreement, we still have an agreement even though I haven't paid the dealer yet and the dealer hasn't given me the car yet. It's the same thing. It's an executory contract. But that contract and the consummation of that agreement is required to have certain disclosures. If there's going to be, for example, penalties associated with withdrawing from it, that's got to be spelled out, right? But in this case, there weren't any penalties, so I'm confused. Well, we're trying to ascertain at what point was there really an agreement here and when was that incurred? Because we have, I mean, the Supreme Court, while it's indicated that we should give deference to Reg V, it's also reminded us that we still apply Chevron. And so we have a threshold question about whether there's even ambiguity in the statute and some gap that needs to be filled in the statute that says what you need is an agreement. We have a gap that leaves room to say, no, what we mean is only written agreements, much less we're not going to count written confirmations of oral agreements. But then you have regulations that deal with that. And Regulation V requires the written agreement. And then you have the official. You had a written agreement at some point, didn't you? I mean, this is really major surgery. What you're talking about is the electronic exchange of e-mails regarding the deductible. But it wasn't an exchange. There was only an e-mail with an offer. Did you at any time have a written agreement with respect to the knee surgery? That sounds like a major operation. Did he come in at some time and agree that I'm going to go through with this and this is how much you have to charge and you're going to probably charge an insurance company? That's what the financial policy does. The financial policy sets forth that the insurance company is going to be charged and he's responsible for his deductible. So at no time did you have any written agreement? As far as the client is informing me now. Okay. My understanding. As your adversary has pointed out, it does seem that the hospital agreed in the district court, at least for purposes of argument, that the hospital qualified generally as a creditor. Was that confession on the basis of some agreement that was different in kind than the agreements that we have before us in this case? Not at all. It was simply a confession to tell the judge, you don't have to worry about that issue on the motion to dismiss. You can just focus on this specific transaction as to whether or not this was a credit transaction. That was the sole purpose of that confession. The confession was clearly just for purposes of this motion for no other purpose. Had the motion not been dismissed, that would have been disputed. Has the hospital elsewhere taken a position that it's a creditor generally? I don't think it ever has. I don't think it's ever been, other than this case, I don't think there's ever been a challenge or an accusation that it's a creditor. Counsel, the imposition of Rule 11 sanctions here was on order of the district court. It's something we can evaluate on that basis. Your client, of course, was the recipient of the sanctions award, so to the extent that you are willing to address the issue and offer your assistance to the court in thinking these issues through, we appreciate it, but we recognize that this is something that was imposed by the district court. We're looking at the propriety of that on the part of the district court and the judge's actions there. With that, I think we do have some questions, if you're willing to help us think through them. Would you like me to address the issue that was in the court's letter as to whether or not the court can issue? That's one of them, because given the terms of 11C4, it raises a threshold question about whether it's a per se abuse of discretion to award attorneys with a sua sponte sanctions award. I took a look at the cases that the court cited, and in all due deference to the courts that issued those opinions, I disagree with them. The one court said, I believe it was Hutchinson v. Steele, indicated that Rule 11 allows attorney's fees only in cases where there's a motion by a party. If you look at Rule 11, 1C4, the rule doesn't use the word only at all. What the rule says is when sanction is posed sua sponte by the court, it's what suffices to deter repetition of conduct or comparable conduct by others similarly situated. Then it gives examples. It says this sanction may include non-monetary directives in order to pay a penalty into court. It doesn't say those are the only sanctions that a court can impose. In case attorney's fees will be shifted only upon motion. The rule does not use that word. There's nowhere in the Rule 11 that says only. It says it's supposed to be done that way. But my question is, assuming there has to be some sort of application to the court to start the procedure, how is a court sua sponte bringing something on for hearing? Talk about to a motion. Is it the same thing as a motion? I believe it is, and particularly in this case. How is it the same? The counsel didn't receive any prior notice. Well, they did. In the order in the memorandum in December 2017, there was an order within the opinion dismissing the complaint that statistically said orders should cause to explain why plaintiff's counsel had the basis to bring the complaint and the claims that they did. But beyond that, it didn't specify points that would be dispositive of a Rule 11 motion. In other words, we're dealing with notice and an opportunity to be heard. If I just tell you you're under indictment and I will tell you what the charges are after we argue it, that doesn't give you much notice as to what you're being indicted for. Well, I think it did because the court went through the fact that they made false allegations in the complaint. But it was more than that. They didn't just make the false allegations in the complaint. Even after the certification from Gino Pino was filed in connection with my motion, they withdrew only the FTA claim. They didn't withdraw any of the specific paragraphs in opposition to the motion to dismiss. They didn't come out and tell the court no payment was ever made. That's correct. That's prompting the judge to schedule the conference call. I think it was December 14, 2016. The judge wanted to get to the bottom of it because counsel wasn't being forthcoming. And it was during that conference call that Judge Balson specifically asked them, was there a payment made or not? And that's the first time that they ever came clean and said no payment was ever made. Those allegations in the complaint, the factual allegations, are false. What are we to make of the district court repeatedly saying that it's not facing sanctions on that claim, on the withdrawal of that claim, and yet these allegations seem to be related only to that claim? Well, see, I disagree because, as we discussed earlier, whether or not there was a payment may suffice as consummation of a TILA debt. And I think that's why Planot didn't withdraw the specific allegations in the complaint. There was no question here in these specific allegations, don't go to an initial payment that might, I take your point, you could look to whether there was a payment to form a contract. This went to the statements that there were further numerous deductions. It was already acknowledged that there had been a $200 down payment. So how did these allegations or the falsity of them relate to anything other than the electronic funds transfer? Because I think they went to the issue of whether there was consummation under TILA, whether there were the multi-payments under TILA, which if Planot had made payments, the court may be able to find that there was consummation. And that act was acceptance if you put aside the written agreement requirement. But wasn't that already resolved with the $200 payment? I don't believe so because it's our position that $200 payment was made under the financial policy, not as part of the payment plan. And even the emails, there's nothing in the emails that say that $200 payment prior to surgery was part of any payment plan. Well, taking the entire thing in its perspective, the judge seemed to be very disturbed and based it on, I mean, he said something about litigation out of control, lack of professional diligence, and what else, a couple other things, audacious. And we have a statute here which there were writings of some sort, but to the judge going a little far when he says these types of comments, when perhaps even if we agree that it's not a cause of action, that is meritorious. But we're dealing with a consumer statute here, liberally to consume. And why is it in a bona fide attempt to expand and to make more palatable to borrowers what the law is? Because he had writings here. I mean, there were writings. And there was something here that you could put your foot on and say based it on something. This was not illusory. So has the judge gone wild here with this type of conduct? I think the judge may have interjected his personal opinion, but I don't think his conclusions or actions were wrong. In this case, the plaintiff is unable to cite to any case that would turn this transaction into a credit transaction. Well, you know, I always go back to the first 1983 case. No one knew a 1983 was a sleeping giant. And someone filed a case. They got dismissed right off the bat in the trial court, went all the way to Supreme Court. And the Supreme Court the first time said, yeah, you have a right to beat up by an officer. You have a civil right here. And everyone was amazed. They said, this has been on the books forever. Never knew you could do that. I understand. And I think that Rule 11 allows for that exception. I don't think this case was that. During the initial conference with Judge Balsam, plaintiff's counsel cited to the Ball v. Bright opinion. Ball v. Bright does not support the plaintiff's position in any way, shape, or form. Included in the Bright v. Ball opinion. Why would it be extended to this type of situation, though? Because the facts, I think, are almost right on point. There's no reason for it to be extended in this case. I think if you had a payment by the plaintiff, which they allege, maybe it could be extended. And I think that's where the judge was getting upset with the situation that he had in front of him. There's room for debate about what the significance was of the $200 payment. I understand you characterized it one way, but that is not necessarily the only way it could be used. How could we conclude that the district court was right to deem the argument, the existence of an agreement, a qualifying agreement as what would need to be patently frivolous when the district court itself said, in connection with summary judgment, that the Federal Reserve should consider reviving the regulation so it's clear that TILA does not extend to mere accommodations of delay in payment. Isn't that a recognition that this is an unclear area of the law? I don't think it is because the court had in front of it the Braith versus Ball opinion and the Federal Reserve Board comments. And the Federal Reserve Board comments are also almost right on point. The only difference is you're dealing with a bank versus a hospital. Braith was 38 years ago. It's a single court that hasn't been followed by any other since. So how could that be a basis to conclude that an argument to take a different tack is patently frivolous? The plaintiff's counsel was unable to cite to any written opinion from any court in this country that allowed the TILA claim when there wasn't a written agreement. I mean, there wasn't something that was consummated enforceable obligation against the plaintiff. And the email offering this payment plan to be paid by a credit card, which plaintiff says the agreement was, it was to be deducted from his checking account, doesn't even come close to any published case. Any other questions? That's better. Thank you, counsel. Thank you very much, Your Honor. I will be very brief, Your Honor. Thank you. Thank you for the court's indulgence. Rothman's contention that the financial policy created the debt is not correct based on the actual terms of the document. The document itself, if the court looks at it, specifically references a signed financial agreement that would be required in a variety of circumstances, suggesting that this financial policy is not, in fact, a financial agreement, that there is some other type of document that would be required. That says if you are a self-pay or if you're uninsured, you will be required to sign a signed financial agreement separately. So this is not, in fact, a financial agreement. Second point, the consummation here, we have alleged in the complaint in paragraph 20 that the terms of the agreement was that there would be a $200 down payment and $100 per month. The consummation occurred when the $200 down payment was made. That $200 was not necessarily for the deductible, as I recall. It was you have to pay this first and then make the following payment. It all took place in a single conversation, Your Honor. When Mr. Wolfington and his father called Rothman and said, hey, we can't pay the deductible in full before surgery. What do you want to do? They negotiated, okay, you're going to pay us $200 now and you'll pay us $100 a month, and those were the terms of the agreement. Rothman takes the position, no, no, no, the $200 payment just came out of the blue. It was just willy-nilly. It was pursuant to some financial policy, and really the payment plan here is just $100 a month, which was never consummated. But we specifically alleged – sorry. We're still missing the signed portion of the requirement. We're missing a hand signature. I don't concede that we are missing something equivalent to a signature, Your Honor, whether that be a checkbox or whether that be consent or something else that would be the legal equivalent of a signature. I think a box that says I agree to the terms mentioned here and a certificate. Sure, because that replaces the need for a signature. Yes, Your Honor. In the same way that my slash S replaces my need to actually sign my pleadings, I'm still confirming all of the various ethical responsibilities that I have. I'm still submitting the brief to the court as an officer of the court without hand signing it. There are a variety of electronic features that we now have that are the legal functional equivalent of what used to be a handwritten signature. Have you ever had a court that says that, that a checkbox is the equivalent of a hand signature? I can't say that I've looked for that case, Your Honor, but I certainly can't say that I've – Your argument is that you believe that it does. Well, certainly, Your Honor, there are cases with the check consent boxes. I think there are a lot of cases that deal with that in the software industry that you are consenting to certain terms when you are checking a box. There's a specific acronym that's escaping you right now, but there's a specific way that does come up. Even if we were prepared to accept that by checking off a box on a website or sending a reply email that came from your personal email address was the equivalent in today's age of a signature, we don't have either of those here, right? We don't, however, Your Honor, we do know that Mr. Wolfington gave consent over the phone, and whether or not the party taking that consent checked a box on a form or something else in Rothman's system that could be the functional equivalent of a signature. That is what I'm saying is the possibility. That, in fact, he was consenting, providing agreement, yes, I'm going to be bound by these terms. I can't tell you what Rothman did with that, but they might have done with that something that is the legal equivalent of a signature. I can see that with many problems where you can just say on the phone, yes, I accept. And now that's the equivalent of a signed document. Well, again, Your Honor, it's given. So it's going to end up, no, I didn't say that. Yes, you said that. No, I didn't say that. Well, because presumably the lender would then be providing a copy of the document to the borrower, which we don't have here. So you wouldn't have those issues under those circumstances. But, again, given the purposes of the statute, we think that's appropriate here. But the agency that administers it has taken a different view. And our general approach, particularly if we're looking at an agency's own interpretation of its regulations, is that we give that great deference, and it's generally dispositive unless it's not rational. Does the requirement that it be a written agreement, which is the reg itself, and then the overlay of we're not going to treat a follow-up confirmation of an oral agreement, you know, one-sided confirmation of an oral agreement, as meeting that requirement, is that so irrational that we shouldn't accept the agency's decision to draw a line there to address the concerns that Judge Fuente is referring to? I personally think that given the purposes of the statute, it is irrational to let a lender decide whether or not it is subject to Tillow disclosure requirements. However, I don't think the court needs to go that far in order to reverse the dismissal here, because I think at the very least there is sufficient evidence to show that an agreement may be in existence and should have been subject to discovery in light of what we have alleged. I also think in terms of the sanction, the fact that there is this conflict of, is a writing required because the statute doesn't say it and the regulation does? What is sufficient to constitute a written agreement? Even the regulation doesn't answer that. It may say in an interpretation that a confirmation of an oral agreement isn't enough, but it doesn't say what is. The fact that we've had this robust discussion about these issues for some period of time this morning, all goes to show that in fact the plaintiff's counsel did nothing inappropriate by asserting the claim here, even if this panel were to ultimately decide that the claim should be dismissed. And I guess my final point is I know that we talked about what the allegations of the complaint are, and does the complaint specifically say written agreement? And I had to answer no, it does not use that exact phrase, written agreement. To the extent that that would have been the basis for the district court, which it isn't, or an alternative basis, presumably we should have been allowed the opportunity to amend. We could have alleged upon information and belief based on what we have, that a written agreement exists and is in the possession of Rothman, but we did not have that opportunity because the court decided with prejudice and in its entirety to dismiss the case based on a concession that was not made. So for all those reasons, we respectfully ask that the court reverse both the marriage decision, reverse the sanctions decision, and vacate the monetary sanction issued against the plaintiff's counsel. Thank you, Your Honor. I would thank both counsel for, in this case, both excellent briefing and excellent arguments. And we will take the case under advisement.